IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:10-CV-190-D

| | | |
|---|---|---|
| CAROLYN PICKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Carolyn Dixon Pickett ("plaintiff" or "claimant") appeals the final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability benefits ("benefits"). Each party has filed a motion for judgment on the pleadings. [D.E. 24, 29]. As explained below, the court grants the Commissioner's motion for judgment on the pleadings, denies plaintiff's motion, and affirms the final decision of the Commissioner.

I.

Plaintiff applied for benefits on June 1, 2006, alleging a disability onset date of February 28, 2005, due to a lower back injury. R. at 12, 105–15. Her application was denied initially and upon reconsideration, and a request for a hearing was timely filed. Id. at 12, 38–55, 57–64, 66. On September 18, 2008, an Administrative Law Judge ("ALJ") held a video hearing regarding plaintiff's application for benefits. Id. at 19–31.

On October 14, 2008, the ALJ issued a decision denying plaintiff's application. Id. at 12–18. On December 12, 2008, plaintiff timely requested review. Id. at 7. On July 30, 2010, the Appeals Council denied the request for review. Id. at 1–3. On September 24, 2010, plaintiff timely filed this action for judicial review. See 42 U.S.C. § 405(g).

II.

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). The regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled. Essentially, this process requires the ALJ to consider whether a claimant (1) is engaged in substantial gainful employment; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) possesses the residual functional capacity ("RFC") to return to his past relevant work; and (5) if not, whether he can perform other work in light of his age, education, work experience, and RFC. See 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See, e.g., Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Pass, 65 F.3d at 1203.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ made the finding at step one that plaintiff had not engaged in substantial gainful activity since February 28, 2005, the alleged disability onset date. R. at 14 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments which were severe within the meaning of 20 C.F.R. § 404.1520(c): degenerative disc disease and degenerative joint disease. Id. at 14 ¶ 3. At step three, however, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Id. at 14 ¶ 4.

The ALJ determined that plaintiff had the RFC "to perform the full range of light work."[1] Id. at 14 ¶ 5. Based on this RFC, the ALJ found at step four that plaintiff could not perform any past relevant work. Id. at 17 ¶ 6.

---

[1] The Regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

2

At step five, the ALJ determined that the Medical-Vocational Guidelines are controlling. Id. at 17 ¶ 9. Based on plaintiff's RFC and the vocational factors of her age, education, and previous work experience, the ALJ found that there were a significant number of jobs in the national economy that plaintiff could perform. Id. at 17 ¶ 10. Accordingly, the ALJ found plaintiff not disabled during the relevant period. Id. at 17 ¶ 11.

### III.

In reviewing the parties' cross-motions for judgment on the pleadings, the court "must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Under the substantial evidence standard, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." Craig, 76 F.3d at 589. Before the court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. See, e.g., Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439–40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

Plaintiff contends that the ALJ's decision should be reversed because: (1) the ALJ did not properly assess several medical opinions and plaintiff's credibility in determining her RFC, and (2) the ALJ erroneously applied the Medical-Vocational Guidelines. Pl. Mem. Supp. Mot. J. Plead. 10–26. She argues that a proper evaluation of the evidence establishes that she is precluded from working due to her inability to stand, sit, or maintain any posture for prolonged periods of time. She also cites her need to change positions and move around for relief of her back pain and her need otherwise to take unscheduled breaks away from the work station. Id.

3

A.

The principles governing plaintiff's challenges to the weight given the opinions at issue are well defined. Opinions of physicians who have treated a claimant are generally accorded more weight than the opinions of physicians lacking a treatment relationship. 20 C.F.R. § 404.1527(d)(2). After all, the treating sources are likely to be those "most able to provide a detailed, longitudinal picture of . . . [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. Indeed, the Regulations provide that opinions of treating physicians on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); see Craig, 76 F.3d at 590; Ward v. Chater, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). But "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." Soc. Sec. R. 96-2p, 1996 WL 374188, at *2. Indeed, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590; Gray v. Astrue, Civ. Act. No. CBD-10-1304, 2011 WL 2912789, at *3 (D. Md. July 15, 2011).

When the medical opinions of the treating source are not given controlling weight, the Regulations prescribe factors to consider in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions through relevant evidence and explanation by the source, the consistency of the opinions with the record, and any specialization of the provider. 20 C.F.R. § 404.1527(d)(2)-(6). An ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent

4

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5.

Similarly, the opinions of physicians who examine a claimant are generally entitled to more weight than those of such providers who did not perform an examination. See 20 C.F.R. § 404.1527(d)(1), (2); Soc. Sec. R. 96-6p, 1996 WL 374180, at *2 (July 2, 1996). The weight ultimately attributed to medical opinions of nonexamining sources depends on the same factors, to the extent applicable, used to evaluate the medical opinions of treating sources. 20 C.F.R. § 404.1527(f). In addition, if applicable, the status of the nonexamining source (such as a state agency medical consultant or medical expert used by the Commissioner) is to be considered. 20 C.F.R. § 404.1527(f). Unless the treating source's medical opinions are given controlling weight, the ALJ must explain in his decision the weight given to the opinions of nonexamining sources as he must do for treating source opinions. 20 C.F.R. § 404.1527(f)(2)(ii).

The same factors used to determine the weight to be accorded the opinions of physicians, who are so-called "acceptable medical sources," apply to the opinions of providers who are deemed to be at a different professional level, so-called "other sources," such as physician assistants. See Soc. Sec. R. 06-03p, 2006 WL 2329939, at *4–5 (Aug. 9, 2006); see also 20 C.F.R. § 404.1527(d). As with opinions from physicians, the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Soc. Sec. R. 06-03p, 2006 WL 2329939, at *6.

Primary care physician Naseem Nasrallah, M.D. treated plaintiff from March 14, 1999, through August 7, 2008. R. at 218–20, 285–98, 325–27, 332–35. In a statement dated June 17, 2008, he found that plaintiff is "limited in her ability to stand, sit, or maintain any posture for prolonged periods of time and any work she might be able to do will have to accommodate the flexibility to change positions and move about as needed to help moderate her lower back pain." Id. at 331. Dr. Nasrallah also found that plaintiff "will likely require unscheduled breaks away from

5

her work station" and that, despite treatment, she "will have better and worse days that will impact her ability to maintain a forty hour a week work schedule due to increased pain and limitations." Id. Plaintiff contends that Dr. Nasrallah's opinions should have been given controlling weight.

The ALJ gave Dr. Nasrallah's opinions limited weight and provided five reasons. Id. at 16. First, the ALJ noted that Dr. Nasrallah did not elaborate on the basis for his determination of plaintiff's limitations. Id.; see 20 C.F.R. § 404.1527(d)(3) ("The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Second, the ALJ noted that the opinions were not based on functional testing. R. at 16. Moreover, contrary to plaintiff's contention, the court does not believe this finding shows that the ALJ incorrectly believed that functional testing was necessary to validate Dr. Nasrallah's opinions. Rather, the ALJ indicated that the absence of such testing made the opinions less convincing, a manifestly proper consideration. See 20 C.F.R. § 404.1527(d)(2)(ii) ("We will look at . . . the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories."), (d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.").

Third, the ALJ cited the "long break in treatment records" before Dr. Nasrallah rendered his opinions. R. at 16. The ALJ found that "[t]here was essentially a cessation of treatment between 2006 and May 2008, with minimal treatment in 2008 consisting primarily of limited physical therapy and some x-rays of the claimant's knees." Id. at 15. This break in treatment relates not only to the extent of Dr. Nasrallah's treatment relationship with plaintiff, but also the consistency of his opinions with the record as whole since the break in treatment tends to belie the severity of her condition. See 20 C.F.R. § 404.1527(d)(2)(i) ("[T]he longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."), (d)(4); see also id. § 404.1528(c)(3)(iv), (v) (establishing medication and other treatment received as factors in evaluating a claimant's symptoms).

Fourth, the ALJ found that Dr. Nasrallah's opinions were inconsistent with her "general activities." R. at 16; see 20 C.F.R. § 404.1527(d)(4). Although plaintiff contends the term "general

6

activities" does not adequately identify the activities referenced, it is clear to the court that the ALJ is referring to his earlier finding that plaintiff's "daily activities include cooking, housework, grocery shopping, reading, and walking." Id. at 15; see also id. at 28–30 (plaintiff's hearing testimony regarding such activities), 223 (statement in report of rehabilitation specialist Manning that "Ms. Pickett is able to accomplish all activities of daily living.").[2]

Fifth, the ALJ found that Dr. Nasrallah's opinions are inconsistent with objective medical evidence, including his own notes. Id. at 16; see 20 C.F.R. § 404.1527(c)(2), (d)(3), (4). Although plaintiff argues that the ALJ did not adequately identify supporting evidence, the ALJ referenced the extended summary and analysis of the objective medical evidence he presented in his decision. See R. at 15–16. This summary includes a reference to Dr. Nasrallah's finding in a note dated May 27, 2008, two months after the date of his opinions, that plaintiff's back pain was "stable." Id. at 15 (citing id. at 335) ("In 2008, the claimant's back pain was noted to be 'stable' (i.e., Exhibit 17F)."). Moreover, the ALJ's determination that plaintiff is limited to work at the light exertional level shows that he did not reject entirely the general notion evinced in Dr. Nasrallah's opinions that plaintiff's back condition places limitations on her. Instead, the ALJ's determination substantiates that the ALJ gave Dr. Nasrallah's opinions limited weight.

In sum, the court concludes that the ALJ did not err in according Dr. Nasrallah's opinions limited weight. Thus, plaintiff's first challenge to the ALJ's RFC determination fails.

Alan Tamadon, M.D., a physician at a rehabilitation clinic, saw plaintiff three times during January and February 2008 for a worker's compensation disability rating of her back condition and ultimately prescribed a transcutaneous electrical nerve stimulation or TENS unit for pain. Id. at 206–16. In an office visit note dated February 24, 2006, Dr. Tamadon made, among other findings, the determination that plaintiff has "[p]ermanent work restrictions of work at light physical demand level of no lifting greater than 20 lbs. occasionally, no lifting greater than 10 lbs. frequently or

---

[2] The ALJ's finding regarding plaintiff's activities of daily living also reflects his determination, that her statements regarding her symptoms are not fully credible. See R. at 16.

7

constantly." Id. at 207. This finding is consistent with the definition of light work in 20 C.F.R. § 404.1567(b). The ALJ alluded to Dr. Tamadon's assessment of plaintiff, obviously giving it weight. Id. at 16 ("[A] clinical examination showed . . . ." (citing Exhibit 6F)). Nowhere in his note does Dr. Tamadon expressly address plaintiff's ability to sit, stand, or walk. Although plaintiff argues that the absence of any such references shows that Dr. Tamadon found her to be limited in these areas, the ALJ did not interpret Dr. Tamadon's findings in this manner, and the ALJ's interpretation was lawful.

Notably, Dr. Tamadon's other findings tend to negate the argument that he determined plaintiff to have any such limitations. In addition to his light work finding, Dr. Tamadon found that plaintiff was entitled to only a five percent permanent partial disability rating of her back. Id. at 207. Further, Dr. Tamadon's physical examination of plaintiff was largely benign. Id. at 206. As to a recent Functional Capacity Evaluation ("FCE") of plaintiff, he noted "patient's submaximal effort" during the evaluation, id. at 207—an apparent reference to the conclusion in the FCE report that "[d]ue to the amount of statistically identified submaximal effort and self-limiting behavior, [plaintiff's] true abilities may be greater than those demonstrated during [the] evaluation," id. at 181. Thus, the court rejects plaintiff's challenge to the ALJ's treatment of Dr. Tamadon's opinions.

Plaintiff also challenges how the ALJ analyzed the physical RFC assessment of a nonexamining state agency medical consultant, not identified as a physician, dated August 2, 2006. Id. at 254–61. The assessment found plaintiff limited to light work, id. at 255 ¶¶ 1–4, limited to only occasional pushing and pulling with her left lower extremity, id. at 255 ¶¶ 5–6, and limited to only occasional climbing and stooping, id. at 256 ¶¶ 1, 3. The ALJ stated of this assessment that "[t]o the extent it is consistent with the [RFC] articulated above, it is given moderate weight." Id. at 16. Plaintiff contends that the ALJ should have given the finding of an exertional limitation with respect to her lower left extremity greater weight.

In explaining the weight that he accorded this assessment, the ALJ noted that it is more consistent with the record than another state agency assessment finding plaintiff capable of medium

8

work, which he rejected. Id. at 16, 316–23.³ With respect to the limitations beyond the light weight limitation, the ALJ explained that these "additional limitations [are] not otherwise suggested or consistent with clinical testing." Id. at 16. This explanation comports with the ALJ's summary and analysis of the objective medical evidence, including the evidence concerning plaintiff's lower extremities, the absence of acute findings from x-rays of plaintiff's knees in 2006, and the benign findings by Dr. Tamadon. Id. at 15–16. The ALJ's rationale for the weight he accorded the state agency consultant's assessment is supported by substantial evidence.

Finally plaintiff cites the records of Carolina Sports Medicine, where plaintiff received treatment between March and June 2005. Id. at 231–53. Board-certified orthopedic surgeon Douglass F. Messina, M.D. completed two evaluations, id. at 232, 242, and a certified physician's assistant completed three evaluations. Id. at 234, 236, 244. The evaluations all state that plaintiff is limited to "light duty," but also recognize varying combinations of additional limitations, including limitations on lifting weight (15 or 20 lbs.), prolonged sitting and standing (including a need to alternate periodically between sitting and standing), forceful pushing or pulling, bending and stooping, climbing, and reaching overhead. Id. at 232, 234, 236, 242, 244. The ALJ cited the records from Carolina Sports Medicine (i.e., Exhibit 9F) in support of his finding that "[c]onsistently, the claimant was found to be capable of light exertional work." Id. at 16. However, plaintiff argues that this evidence compelled the determination that she could not perform light work.

The court has reviewed the records. The surgeon and physician's assistant prepared the records immediately following plaintiff's February 28, 2005 back injury. Moreover, the limitations tend to decrease in number and severity over the evaluation period. For example, on March 9, 2005, the limitations concerned lifting no more than 15 lbs. and no prolonged sitting. Id. at 244. On June 21, 2005, the weight limit was increased 20 lbs. and the prolonged sitting restriction was dropped. Id. at 232. Further, the course of treatment was relatively brief. Cf. 20 C.F.R. § 404.1527(d)(2)(i).

---

[3] Although the ALJ rejected the assessment that plaintiff can do medium work, the assessment supports the finding that plaintiff can do light work. After all, "[i]f someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

9

The ALJ applied the correct legal standard concerning this evidence, and the analysis is supported by substantial evidence.

In sum, the ALJ's determination regarding the opinion evidence in question was reached in accordance with applicable legal standards and is supported by substantial evidence. Thus, plaintiff's challenge to the ALJ's RFC determination on the basis of his handling of the opinion evidence fails.

B.

Plaintiff's final challenge to the RFC determination is her contention that the ALJ improperly evaluated the credibility of her allegations of limitations arising from her back impairments. As noted, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. Craig, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. Id. at 594–95. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. Id. at 595. If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "grounded in the evidence." Dean v. Barnhart, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *4 (2 July 1996)); see also 20 C.F.R. § 404.1529 (setting out factors in evaluation of claimant's pain and other symptoms).

Here, plaintiff testified at the hearing that she injured her back on the job on February 28, 2005. R. at 23. She stated that she suffers from pain in her lower back, on the sides of her back, and in her legs. Id. at 24. For pain relief, she uses a TENS unit every day, takes pain medication, and lays down for about an hour each day. Id. at 24–25, 27. Plaintiff also stated that she suffers from drowsiness due to medication side effects, id. at 25, and experiences memory loss resulting in, for example, her forgetting where she puts things, id. at 30. Plaintiff further testified that she prepares her meals, goes grocery shopping, and does her laundry, but does not do any house cleaning or yard work. Id. at 28–29. She also testified that she tries to walk every day and that she can walk about one block on a good day. Id. at 28.

10

In evaluating plaintiff's credibility, the ALJ correctly followed the two-step process. Id. at 16–17. As to the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some of the symptoms she alleges. Id. at 16. At the second step, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment." Id. In addition to this inconsistency, the ALJ further explained that plaintiff's "subjective complaints are not consistent with the objective medical evidence, including the lack of treatment and minimal treatment." Id. at 17. The ALJ comprehensively discussed the medical records underlying this finding. Id. at 15–16. The ALJ also explained that "[a]t the hearing, [plaintiff] alleged substantial nonexertional limitations that were not reported to treating sources, including memory difficulties." Id. at 17. More specifically, the ALJ found that plaintiff "testified to medication side effects, specifically drowsiness, but this was generally not noted within treatment records or unresolved by a change in medication" and that "[t]reatment records also did not generally include reports of memory difficulties." Id. at 15.

The ALJ did give some weight to plaintiff's complaints and found plaintiff's medical condition to be severe. Id. at 15. However, the ALJ further concluded that the severity of her condition warranted a limitation to light work, rather than work at a higher exertional level. Id. The ALJ's credibility determination is based on the proper legal standards and supported by substantial evidence. Accordingly, plaintiff's challenge fails.

C.

Finally, plaintiff contends that the ALJ erred by relying on the Medical-Vocational Guidelines or so-called grids at step five to direct a determination of not disabled and instead was required to use a vocational expert. The grids are a set of rules which direct a conclusion as to whether or not a claimant is disabled. See generally 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a). They are grouped by RFC for sedentary, light, and medium work, respectively. Id. Within each such RFC grouping, the criteria applied are the vocational factors—namely, age, education, and previous work experience (e.g., none, unskilled, semiskilled, skilled, transferability of skills). Id.

11

The grids presume a claimant whose impairments prevent him from doing past relevant work or who has no past relevant work. Id. An ALJ may not rely exclusively on the grids where a nonexertional condition or impairment "affects [a claimant's] residual functional capacity to perform the work of which he is exertionally capable." Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); see also 20 C.F.R. § 404.1569a(d). A nonexertional limitation is one which affects a claimant's ability to meet the demands of jobs other than strength demands and can include "difficulty performing the . . . postural functions of some work" and pain. See 20 C.F.R. § 404.1569a(c)(1)(vi) (recognizing postural limitations as nonexertional limitations); Wilson v. Heckler, 743 F.2d 218, 222 (4th Cir. 1984) (recognizing inability to sit for prolonged periods and pain as nonexertional limitations); Soc. Sec. R. 83-12, 1983 WL 31253, at *4 (1983) (discussing need to alternate sitting and standing as nonexertional limitation). In such cases, an ALJ would be permitted to use the grids as a guide but, generally, must also employ expert vocational testimony to show that jobs exist in the national economy which the claimant can perform. Aistrop v. Barnhart, 36 Fed. Appx. 145, 146–47 (4th Cir. 2002). On the other hand, if a claimant's nonexertional impairments do not prevent him from performing the full range of work at a given exertional level, the ALJ may rely solely on the grids to satisfy the burden of proof at step five. Coffman v. Bowen, 829 F.2d 514, 518 (4th Cir. 1987); Gory v. Schweiker, 712 F.2d 929, 930–31 (4th Cir. 1983).

Plaintiff argues that the ALJ's reliance on the grids was improper because of her alleged nonexertional impairments. Specifically, she asserts that her "need to alternate between positions and to take unscheduled breaks constitute nonexertional impairments or limitations" because "they show her to be unable to perform the full range of either light or sedentary work." Pl.'s Resp. [D.E. 32] at 9–10. However, her argument is based solely on the contention that the ALJ's RFC determination was not supported by substantial evidence. The court already has upheld the ALJ's RFC determination that plaintiff can perform the full range of light work. Accordingly, plaintiff's challenge to the ALJ's reliance on the grids based on her allegations of nonexertional limitations fails.

12

Plaintiff also challenges the ALJ's use of the grids in light of the opinions of rehabilitation specialist Bob Manning, M.S., C.R.C. (i.e., Certified Rehabilitation Counselor) expressed in an initial report dated June 5, 2006, id. at 221–30, and a supplemental report dated September 4, 2008. Id. at 337–39. In his initial report, Manning found that plaintiff "will experience difficulty in returning to work within her abilities in the local labor market," but he did not rule out the availability of jobs to her. Id. at 230. In his supplemental report, he states more negatively that "it is not realistic to expect [plaintiff] to return to work in any capacity in the local labor market." Id. at 339.

The ALJ gave Manning's opinions limited weight. Id. at 16. Plaintiff contends that the ALJ erred in doing so. The ALJ justified the weight he accorded Manning's opinions in both reports on the grounds that they are based at least in part on plaintiff's subjective complaints, are not supported by any functional testing, and are not consistent with the record as a whole. Id. With respect to the referenced opinion in the supplemental report, the ALJ noted that it applies to jobs in the local labor market, although the same point would arguably apply to the opinions in the initial report. Id. The local job market has limited significance because at step five of the sequential analysis the test is whether there are jobs in significant numbers "in the national economy (either in the region where you live or in several regions in the country)." 20 C.F.R. § 404.1560(c)(1).

The ALJ's rationale for his treatment of Manning's opinions is sufficient and is supported by substantial evidence. Thus, the ALJ's use of the grids was proper in all respects.

IV.

The ALJ applied the proper legal standards and the decision is supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings [D.E. 29] is GRANTED, plaintiff's motion for judgment on the pleadings [D.E. 24] is DENIED, and the final decision of the Commissioner is AFFIRMED.

SO ORDERED. This **12** day of September 2011.

JAMES C. DEVER III
United States District Judge